## Fulton *versus* Hood *et al.*

The testimony of experts is receivable, in corroboration of positive evidence, to prove that, in their opinion, the whole of an instrument was written by the same hand, with the same pen and ink, and at the same time.

A party who seeks to relieve himself from the obligation of his bond, on the ground of actual fraud or misrepresentation, must establish that there was a false representation of a matter of substance, important to his interests, and which actually misled him to his hurt.

A false affirmation of a matter resting in opinion, or even of a fact equally open to the knowledge or inquiry of both parties, is not available for such purpose.

A representation to the father of the debtors, that the party making it had authority to settle the claims of the creditors, and that unless the father gave his bond for the sons' debts, the creditors would indict them for obtaining goods under false pretences, and send them to the penitentiary, will not avail as a defence to the bond, even if it were untrue.

Such a threat of resorting to a legal prosecution against the sons, will not constitute duress *per minas ;* or prove that the bond was obtained from the father by undue influence, although it was shown that he was nearly sixty-six years of age, and had a mind easily influenced and excited.

It is no evidence of failure of consideration, that the bond was given for the debts of third parties, for which the obligor was not responsible; that no time was given to the original debtors; and that suits had been brought against them for a portion of the debts intended to be secured by the bond.

In an action on a bond given to secure the payment of the notes of third parties, evidence is not admissible, that it was agreed such notes should be surrendered, which had not been done, but on the contrary they had been put in suit. This might be a defence to the notes, but was none to the bond.

Nor is parol evidence admissible, that at the time of the execution of a bond and warrant of attorney to confess judgment thereon, it was agreed, that judgment should not be entered up for a certain period, unless upon a specified contingency. This would be in direct conflict with the terms of the warrant of attorney.

Effect may be given to such an arrangement, in favour of a junior execution-creditor, but not in favour of the debtor himself; for between the judgment-creditors there is no contract in writing, to be varied by parol.

Such evidence is not admissible, to show that the warrant of attorney was used for a different purpose from that for which it was intended; for until the abuse or perversion of the instrument be shown, no fraud appears sufficient to make way for the admission of parol evidence to affect it.

ERROR to the Common Pleas of *Westmoreland county.*

This was a judgment entered on the 14th August 1854, on a bond and warrant of attorney, in favour of Hood & Co. against Robert Fulton, Sr., in the sum of $20,000, with stay of execution until the 11th May 1864. At February Term 1857, on application of the defendant, this judgment was opened, and the defendant let into a defence. The pleas were *non est factum;* and payment, with leave, &c.

The firm of A. Fulton & Brothers, composed of the sons of the defendant, had been engaged in business in Westmoreland

[Fulton *v.* Hood *et al.*]

county; and in 1854, had become insolvent, being largely indebted to the plaintiffs, and other Philadelphia merchants.

On the 10th July 1854, James Bonbright, a member of the firm of Hood & Co., in company with his attorney, called on the defendant, at his residence, and obtained from him the bond and warrant of attorney in question, which included the debts owing by A. Fulton & Brothers to all their Philadelphia creditors, amounting to $9424.79.

The following is a copy of the bond:—

" Know all men by these presents, that I, Robert Fulton, Sr., am held and firmly bound unto Hood & Co., of the city of Philadelphia, in the sum of twenty thousand dollars, to be paid to the said Hood & Co., their certain attorneys, executors, administrators, or assigns; to which payment well and truly to be made, I do bind myself, my heirs, executors, administrators, and assigns, and each of them, firmly by these presents; sealed with my seal, and dated this 11th day of May, A. D. 1854.

" Whereas, Alex. Fulton & Bros. are indebted to Hood & Co., Cooper, Lippincott, Coffin & Co., S. H. Aldridge, Connover & Bros., and Isaac M. Ashton, in the sum of nine thousand four hundred and twenty-four dollars and seventy-nine cents, for which they have given their promissory notes, payable in tri-annual payments for three years; and also their judgment-note, which is entered in the Court of Common Pleas of Westmoreland county.

" Now, the condition of this obligation is, that in consideration of the time given by said creditors to Alex. Fulton & Bros. on said account, if said Fulton & Bros. should fail to pay the said notes as they fall due, and the said Robert Fulton, Sr., shall and does pay the amount of the same, with interest, and costs, in ten years from this date, then this obligation to be void, else in full force and virtue.

"And further, I do hereby empower any attorney of any court of record in Pennsylvania, to appear for me, and after filing a declaration, to confess judgment against me, for the above penalty, and full costs of suit, release of all errors, and stay of execution for ten years, *from this* 11th *day of May* 1854.

.    " Witness,                    " ROBERT FULTON, SR. [L. S.]
"ALEX. McKINNEY."

On the trial, the defendant objected to the admission of the bond in evidence, on the ground, that the date had been altered from the 10th July 1854, to the 11th May 1854; and that the concluding words " from this 11th day of May 1854," had been added after its execution and delivery.

The plaintiff thereupon called Alexander McKinney, the subscribing witness, by whom the bond had been prepared, who tes-

tified that the alteration in the date, and the addition of the concluding words, were made before its execution. And the defendant having given evidence to the contrary, the plaintiff offered, in corroboration of McKinney's testimony, to prove by experts, that, in their opinion, the whole of the bond, including the additional date, was written by the same hand, with the same pen and ink, and at the same time. The defendant objected to this evidence, but the court overruled the objection, and sealed a bill of exceptions.

The defendant then offered to prove, "that James Bonbright, one of the plaintiffs, before, at, and about the time of the execution of the bond, represented to Robert Fulton, Sr., the defendant, that unless the debts of A. Fulton & Bros. and Fulton Bros., sons of the defendant, were secured, that their eastern creditors, among whom were Cooper, Lippincott, Coffin & Co., S. H. Aldridge, Connover & Bros., Isaac M. Ashton, and others, would indict them for obtaining goods on false pretences; and that they would be sent to the penitentiary; which representation was *false and unauthorized*. That the eastern creditors mentioned, and others of them, *so* informed the witness. Also, that James Bonbright, one of the plaintiffs, before, at, and about the time of the execution of the bond, represented to Robert Fulton, Sr., the defendant, that he was authorized to settle the claims of Cooper, Lippincott, Coffin & Co., S. H. Aldridge, Connover & Bros., and of Isaac M. Ashton, when in fact he was not empowered to do so. That he was not so empowered, was admitted to the witness by said parties or firms." The court below ruled out this evidence, and the defendant excepted.

The defendant further offered to prove, " that, at the time the bond in controversy was executed, James Bonbright, a member of the firm of Hood & Co., was present, and procured the same to be executed, by falsely representing to Robert Fulton, that, if he did not sign it, and secure the payment of the claims of the Philadelphia creditors, whose names are mentioned in the bond, they (the creditors) had determined to indict his sons for obtaining goods under false pretences, and send them to the penitentiary; and that the said representation was false and unauthorized, and that he falsely represented that he had authority to settle said claim." The court below rejected the evidence, and sealed another bill of exceptions.

The defendant then offered to prove, " that the execution of the bond was procured by threats and undue influence, and by false representations. That the evidence proposed to be given is as follows, viz. : that the obligee in the bond told the obligor, at the time of and before its execution, that if he did not execute it, and thus secure the payment of the claims of the Philadelphia creditors, whose names were mentioned in the bond, they (the

[Fulton *v.* Hood *et al.*]

creditors) would indict his sons, whose debts were intended to be secured by it, for obtaining goods under false pretences, that they had determined to do so if the security was not given, and that he (Bonbright) was authorized to tell him so by the creditors, and to settle their claims; that said threat was not made by the creditors, nor was he authorized by them to make any such representations, and they were entirely false; also that by reason of these false representations the defendant executed the bond in dispute." The court overruled this offer, and the defendant excepted.

The defendant further offered to prove, " that, the execution of the bond was procured by threats and undue influence, and by false representations. That the evidence proposed to be given is as follows, viz.: that the obligee in the bond told the obligor, at the time of and before its execution, that if he did not execute it, and thus secure the payment of the claims of the Philadelphia creditors whose names are mentioned in the bond, they (the creditors) would indict his sons, whose debts were intended to be secured by it, for obtaining goods by false pretences. That they had determined to do so, if the bond was not given, and that Bonbright was authorized to tell him so by the creditors, and to settle their claims. That said threats were not made by said creditors, nor was Bonbright authorized to make such representations; that they were entirely false, and that by reason of these false representations the defendant was induced to give the bond. That the defendant is an aged man, near sixty-six years of age, whose mind is easily influenced and excited, and was unduly influenced and excited by the threats and misrepresentations of Bonbright." The court below rejected the evidence, and the defendant excepted.

The defendant then offered to prove, " that at the time of the execution and delivery of the bond, James Bonbright, one of the plaintiffs, represented to R. Fulton, the defendant, that unless he would sign it, the sons of the defendant would be indicted for obtaining goods on false pretences, and would be convicted and sent to the penitentiary; and that he would be a witness against them." Also, " that when the bond was executed and delivered, no time was given by any of the persons or firms mentioned in it to ' Alexander Fulton & Brothers, on their notes." These offers were overruled, and the defendant excepted.

The defendant then offered to prove, " that previous to the execution of the bond, and at the time of delivery, Robert Fulton, Sr., the defendant, had given his endorsed notes to the firm of Hood & Co. for their claim against Alexander Fulton & Brothers, amounting to about $8000. That when the bond was given for this claim, and the others included in it, James Bonbright stipulated with the defendant to surrender him the said endorsed

[Fulton *v.* Hood *et al.*]

notes in a few days, upon his return to Philadelphia, and assured him if he did not do so, the bond should be of no force; and that the said notes have not been given to the defendant, but remain in possession of said Bonbright, or the attorneys of Hood & Co., and that three of them have been sued on." Also, "that the bond was to remain in possession of James Bonbright, one of the plaintiffs, that it was not to be entered up for ten years against the defendant, unless certain specified claims should be placed on the judgment docket of Westmoreland county, amounting to about $4000; and that if it should be entered up in violation of these arrangements, it was to be null and void, and that the bond was entered up in violation of the stipulations." This evidence was overruled, and the defendant excepted.

The defendant then offered to prove "that the execution of the bond was without any consideration; that the debts secured by said bond were the debts of A. Fulton & Brothers, and not the debts of Robert Fulton, and that he was in no way responsible for their payment; and that no time was given to Fulton & Brothers for the payment of said liabilities; and that since the execution of the bond, suits have been brought on a portion of the notes, the payment of which was intended to be secured by the bond." This offer was also overruled, and the defendant excepted.

The ground upon which the court overruled the above propositions was, that the alleged representations did not affect the defendant personally, nor involve him in any pecuniary or personal liabilities. The threats alleged were not made against him, nor did the alleged misrepresentations affect his interest personally or pecuniarily; that the only legitimate influence this could have had upon him was, as affecting his paternal feelings and exciting his paternal sympathies; and as it was not pretended, nor offered to be proved, that there was any moral or physical restraint, or duress, the court were of opinion that, if proved as offered, it would not amount to a defence to the bond.

The jury having found a verdict for the plaintiff, and judgment having been entered thereon, the defendant sued out this writ, and here assigned for error: 1. The admission of the evidence of experts. 2. The rejection of the evidence, which was the subject of his several bills of exception.

*Foster, Cook, Clarke & Markle,* for the plaintiff in error.

*Cowan,* for the defendants in error.

The opinion of the court was delivered by

STRONG, J.—Twenty-one errors have been assigned to this record. Many of them, however, are but repetitions of others,

VOL. X.—24

[Fulton *v.* Hood *et al.*]

clothed in a dress slightly different, but having the same body. Under the plea of *non est factum*, the defendant introduced evidence to show that an alteration had been made in the date of the bond after its execution and delivery. The instrument was twice dated; once at the end of the penal part, and again at the close of the warrant to enter judgment thereon. The scrivener who wrote it testified positively, that no alteration was made after its signature. On the other hand, the sons of the defendant, on account of whose indebtedness the bond was given, testified that when it was signed by their father, the date was the 10th of July 1854, instead of the 11th of May 1854, and that it was but once dated. The allegation of the defendant, therefore, was that the last line of the instrument had been added, after its execution and delivery, and after it had been taken away by the agent of the plaintiffs. To meet this allegation, the plaintiffs were allowed to call experts, and prove by them, that in their opinion the whole instrument, including the last line, was written by the same hand, with the same pen and ink, and at the same time. This evidence was objected to by the defendant, and its admission constitutes the subject of the last nine assignments of error. That it was relevant and material cannot be doubted, for it is obvious, that if the last line of the bond, which contained the date, was written at the same time with the other parts of the instrument, the testimony of the scrivener was completely sustained, and the defence failed. Nor was it contended in the court below, that the witnesses were not experts, but the objection as urged here is, that the subject-matter of their testimony was not competent, that the facts testified to by them could not be legitimately thus proved. It is to be observed, that the evidence was offered only after direct testimony had been given to prove that the bond was genuine, and that it was in the same condition as when signed by the defendant. It was admitted, not as independent, but as corroborative evidence. The case does not require a discussion of the extent to which courts of law have permitted experts to express opinions in regard to handwriting. The rule upon this subject is not the same in different courts, and even in the same court, the decisions have not been uniform. It appears to be generally conceded that, where other writings admitted or proved to be genuine, are already in the case, a jury may compare the handwriting. In such comparisons, Greenleaf asserts the doctrine to be, that they may be aided by experts: 1 *Greenleaf Ev.* § 578. Experts are also allowed to testify, whether the handwriting be natural or feigned. So, too, it has been ruled, that when one writing crosses another, an expert may testify which, in his opinion, was first written: 4 *Moore P. C. Cas.* 433. I am aware that it has been said that, though such opinions are admissible, not much reliance is to be placed upon them. Doubtless, it is

[Fulton *v.* Hood *et al.*]

for the jury to determine how much. But why is not the testimony of the same nature with that which is generally adduced to prove handwriting? The witness who has seen another write but once, may testify to his belief, and that belief is but a deduction which he makes from a comparison with the exemplar in his mind. Why should that exemplar be regarded as more reliable than one presented to the expert's eye? In the present case, the greater part of the bond was proved to be in the handwriting of McKinney, the scrivener, and he had sworn that the whole was written at the same time. In corroboration of his testimony, we see no reason why experts should not have been permitted to testify that the writing itself indicated what the positive testimony of the scrivener declared.

The remaining errors assigned relate to the rejection of evidence offered by the defendant to sustain his equitable plea of payment with leave, &c. The first, second, third, and eighth present the same question. The court overruled the offer of the defendant to prove that, before and at the time when the bond was written, James Bonbright, one of the plaintiffs, represented that he had authority to settle the claims of the Philadelphia creditors, and that, unless the bond was executed, they would indict the sons of the defendant for obtaining goods under false pretences, and send them to the penitentiary; that they had determined to do so; and that these representations were untrue. It is not easy to see how this, if proved, would have been at all material. The alleged representations were not assertions of existing facts, but, at most, of intentions, in their nature almost incapable of proof, or of disproof, and in no particular affecting the consideration of the bond. That they may have presented a motive inducing the father to secure the debts due from his sons, is possible. But a party who seeks release from the obligation of his bond, on the ground of actual fraud or misrepresentation, must establish that there was a false representation of a matter of substance, important to his interests, and actually misleading him to his hurt. A false affirmation of a matter resting in opinion, or even of a fact equally open to the knowledge or inquiry of both parties, is not available for any such purpose. Here the parties dealt upon equal terms. There was no relationship of confidence between them. Bonbright was a creditor seeking to obtain security for a debt due from the defendant's sons. Those sons were at hand when the alleged statements were made. Neither in a court of law, nor of equity, would it be presumed, that any reliance was placed upon them. Nor were they statements of any matter relative to the interests of the defendant, or affecting him personally. Even if no such intention of the creditors existed, his situation is made no worse. It would do him no good, if all was true that Bonbright represented. No authority will be found for the posi-

tion, that an immaterial representation, even though false, made by the obligee of a bond, will avoid the contract, either at law or in equity. The case of Bowen *et al. v.* Buck, 2 *Williams* (*Vt.*) 307, relied upon by the plaintiff in error, is far from establishing such a doctrine. There, the agent of the creditor represented, that a criminal prosecution had been commenced against the debtor; that a requisition had been obtained from the governor of New York, upon the governor of Vermont, for his arrest and extradition, and that he, the agent, then had the papers necessary for that purpose, but agreed that if the note upon which suit was brought should be executed, the prosecution should be stayed and discharged. In fact, these representations were false, and it was held by the Supreme Court of Vermont, that there could be no recovery upon the note thus obtained, mainly because it was obtained in composition of a prosecution for a misdemeanor. But in that case, the representation was personal and material to the promissor. In the present case, the statements of Bonbright had no reference to the obligor, nor was there any assertion that a prosecution had been already commenced, or any engagement to withdraw it, if the bond were given. In the Vermont case, the agreement to withdraw the prosecution was a part of the consideration of the note. Here, it embraced no part of the consideration of the bond. There was, therefore, no damage to the obligor, without which there is no relief, even in equity.

The defendant having failed in obtaining the admission of the evidence thus offered to establish fraud and misrepresentation, next offered it to show duress and undue influence. Coupled with it was the additional fact that the defendant was nearly sixty-six years old; that he had a mind easily influenced and excited; and that he was unduly influenced and excited, by the threats and misrepresentations of Bonbright. There was no proposal to show that he was under any physical or mental constraint, or that his mind was not perfectly free to assent to, or dissent from, the contract. What was meant by the expression "unduly influenced," was left entirely undefined. The duress proposed to be shown, was "*duress per minas,*" and that, not of threats made against the defendant, or his property; nor were they threats of any illegal act, but of a resort to a court of law. Nothing more than this statement is necessary, to vindicate the action of the court below in rejecting the evidence.

The tenth and thirteenth assignments of error have reference to the consideration of the bond. The defendant offered evidence to show, that the debts secured by it were those of A. Fulton & Brothers, and not the debts of Robert Fulton the obligor; and that no time was given for their payment when the bond was executed. Assuming all this to be true, no attempt has been made to show us how it affected the defendant's liability. Beyond ques-

[Fulton *v.* Hood *et al.*]

tion, he could assume a binding obligation to pay the debts of his sons, and the bond itself recited that time had been given to them. If there was a false statement respecting the forbearance, it was the obligor's own statement. No offer was made to prove that, at the time when the instrument was executed, there was any agreement that time should be given to pay the notes of the sons, and that the agreement had been violated. The bond asserts no such contract. It recites the notes, payable in triennial payments, and binds the obligor to pay in ten years, in consideration of the time given, if the sons should make default. The evidence, offered, therefore, neither tended to show want or failure of consideration, much less fraud, for which also it was offered.

Another question is raised by the rejection of the defendant's offer to prove that previous to the execution of the bond, and at the time of the delivery, Robert Fulton had given his endorsed notes to the plaintiffs for their claim against his sons, amounting to about $8000; that when the bond was given for this claim, and the others included in it, Bonbright stipulated to surrender the endorsed notes in a few days, assuring the defendant that if he failed to so, the bond should be of no force; and that the notes had not been surrendered, but that, on the contrary, three of them had been put in suit. If such an arrangement was made, possibly it would constitute a defence to the suits brought upon the notes, but to allow it to be proved on the trial of this issue, would be to admit parol evidence to introduce another condition into the bond; to add to its expressed stipulations. It would be more; it would be, in effect, to allow its provisions to be contradicted by oral testimony. The bond binds the obligor to pay the notes on default of his sons. It, in effect, declares that they are to be retained by the creditors until paid. To give them up would discharge the bond. May a mortgagor prove by parol that, when he executed the mortgage, there was an engagement by the mortgagee to surrender the bond secured by it, immediately after its execution? Surely not; and yet this was what was attempted in the present case. Written instruments are intended to furnish the evidence of contracts,—they are worthless, if they can be affected by such evidence as was here submitted.

Nearly allied to this, was the offer to prove by parol, that the bond was not to be " entered up" for ten years, unless upon a specified contingency; and that if judgment should be entered upon it, in violation of this arrangement, it was to be null and void; and that the bond was entered up, notwithstanding the stipulation. This was in direct conflict with the terms of the warrant of attorney. It is true, that in Ayers's Appeal, 4 *Casey* 179, effect was given to such a parol agreement, in favour of a junior execution-creditor, not, however, in favour of the debtor. As between two judgment-creditors, the reason of the rule which excludes

[Fulton *v.* Hood *et al.*]

parol evidence to vary, add to, or contradict written contracts, does not exist. Between them, there is no contract in writing; but as between the obligor and obligee, the warrant of attorney is expressed authority to enter judgment immediately. A contemporaneous parol agreement not to. enter judgment for ten years, is no less a contradiction of it, than would be an agreement to strike out the warrant entirely. It is argued, however, that under the doctrine of Renshaw *v.* Gans, 7 *Barr* 117, and Rearich *v.* Swinehart, 1 *Jones* 233, the parol evidence was admissible. The principle of those cases is, that obtaining a paper for one purpose, and subsequently using it for a different and unfair purpose, is fraudulent; and that the subsequent abuse will open the door for the admission of parol evidence of what took place at the execution of the instrument. But if the principle reaches so far as is contended by the plaintiff in error, the rule which excludes parol evidence, when offered to alter, add to, or contradict a written instrument, is utterly annihilated. The offer of such evidence always presupposes that the instrument which it attempts to reform is used for a purpose not originally contemplated, and that it is so used the parol evidence proposes to prove. If it must be admitted, on the ground that such abuse of the instrument constitutes a fraud, then the very fact is assumed, before the evidence is given, which it is introduced to prove. This cannot be. Until the abuse or perversion of the written instrument is shown, no fraud appears sufficient to make way for the admission of parol evidence to affect it. The doctrine of those cases is, however, inapplicable to that which is now before us. Here is no attempt to use the instrument for a different purpose than that for which it was made.

There was no error, therefore, in rejecting the evidence, and none that we discover in this entire record.

The judgment is affirmed. ·