## D. R. KULP ET AL. v. SAMUEL BOWEN ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF SNYDER COUNTY.

Argued May 21, 1888—Decided October 1, 1888.

1. The return of service of a writ of ejectment raises but a prima facie legal presumption that the defendants are in the possession of the lands described in the writ, and does not conclusively estop the plaintiff from showing the contrary in another action.

2. The plaintiffs, in an ejectment for a particular tract, filed a bond and had a writ of estrepement served upon the defendants, who, though cutting on another tract the lines of which they knew, and not upon that described in the writ, thereupon ceased operations. The plaintiffs afterwards suffered a nonsuit in the ejectment, when the defendants brought suit upon the estrepement bond: *Held* that they were not entitled to recover.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 404 January Term 1887, Sup. Ct.; court below, No. 8 September Term 1885, C. P.

On July 24, 1885, the defendants appeared to an action in debt sur estrepement bond brought by Samuel Bowen, Sylvester Bowen and Frederick Kline against Darlington R. Kulp, Curtis D. McWilliams, William C. McConnell, Eli Keeler and John Hass. The defendants pleaded, nil debet, payment, payment with leave, etc.

At the trial on September 30, 1886, it was made to appear that on April 7, 1884, Kulp, McWilliams and McConnell, defendants herein, had brought an action of ejectment against Samuel Bowen and the others, plaintiffs herein, to recover a tract of about 400 acres of land known as the James Hepburn, and on filing a bond executed in accordance with the provisions of the act of April 11, 1862, P. L. 430, they caused to be issued against the defendants a writ of estrepement under § 2, act of April 2, 1803, 4 Sm. L. 89, to prevent the commission of waste by the cutting of timber trees upon the land described in the writ. The praecipe described the land by courses, distances

and adjoiners, and alleged it to contain 400 acres and 60 perches, warranted in the name of James Hepburn, and that the defendants had it in their actual possession. The writ of ejectment followed the description contained in the praecipe, and the affidavit upon which the writ of estrepement was awarded, averred that the defendants were committing waste and destruction of and in the premises for which said action of ejectment was pending. The defendants in the ejectment, the plaintiffs in this suit, were then engaged in cutting timber upon a tract which in truth was not the James Hepburn, but another, called the Samuel Bowersox. Subsequently, on March 25, 1885, the plaintiffs in the ejectment, the defendants in this suit, suffered a nonsuit in the ejectment, and the defendants therein then brought this suit on the estrepement bond referred to.

The plaintiffs offered to prove, in substance, their possession of a tract of mountain land, their operations thereon, and that they ceased therefrom upon the service of the writ of estrepement. The plaintiffs objected to the offer as incompetent and irrelevant unless it was proposed to show that the operations abandoned on the service of the estrepement were upon the lands described in the praecipe, writ of ejectment and writ of estrepement. The objection was overruled and evidence admitted. [3]

Samuel Bowen, one of the plaintiffs, called on examination in chief:

Q. I show witness draft of the Samuel Bowersox tract as made by Daniel Weirick, dated April 26, 1883; will you be kind enough to look at that and state whether that represents your tract? A. Yes, sir. Q. Were those lines shown to you before you commenced operations? A. Yes, sir. Q. By whom? A. By Samuel Bowersox. He got Mr. Weirick, and Mr. Bowersox came along, and showed him where the corner was and he said he was such an old man he could not go along; this was on the corner here, on the Northeast corner, and we run up along here the first day and out to the top on the north line; this north line was not run because we thought it was not necessary as there was no timber along there. Q. You found the corners on each side? A. Yes, sir; I said I did not want to cut across the lines and I wanted Bowersox to show me the lines; this is the south line (indicating).

Charge of Court below.

In the defendants' case an offer was made to prove by official copies of the original surveys and other competent evidence, in substance, that the plaintiffs' operations which ceased on the service of the writ of estrepement were upon lands not embraced in the James Hepburn tract described in the praecipe, writ of ejectment and writ of estrepement. The offer was objected to by the plaintiffs, objection sustained and evidence excluded. [5]

The court, BUCHER, P. J., after reciting a history of the case, charged the jury:

The question for you to try is whether this estrepement bond has been broken and whether the present plaintiffs have suffered damages by reason of its breach. [The plaintiffs claim that they have suffered damages because the plaintiffs in the ejectment failed in their action against them and because they were prevented by the estrepement from cutting timber and because the estrepement was issued without right. Now to the extent that you find from the evidence that the plaintiffs were interfered with and prevented from operating on the lands described in the estrepement they are entitled to damages. You will bear in mind that the writ of estrepement restrained the defendants from cutting timber on the James Hepburn tract only. It did not apply to any other lands owned by the plaintiffs. You see the ejectment was brought for the James Hepburn and the writ of estrepement allowed them to cut timber anywhere under the sun except on the James Hepburn tract, according to the metes and bounds set out in the writs of ejectment and estrepement. It did not apply to any other land owned by the plaintiffs. If, therefore, the plaintiffs stopped lumbering operations on any lands other than the James Hepburn survey, it must have been through their own volition, because the writ of estrepement only restrained their operations on the James Hepburn tract. If, therefore, they ceased operations outside of the limits of that survey, it was voluntary and they cannot recover damages here. The plaintiffs in the estrepement having brought the action against the defendants for that survey, they declared of record that they were in possession of the same, according to the metes and bounds set out in the writ. The affidavit on which the estrepe-

ment is granted declares that the present plaintiffs had already cut and were still cutting timber and committing waste on the said James Hepburn survey. We charge you that this constitutes an estoppel in law, and that the defendants here cannot now defeat the claim of the plaintiffs, by evidence that the James Hepburn survey was not located where they said it was in the action of ejectment, or that the plaintiffs were not in the possession of the same at the time the eject-ment was brought, and were not restrained from taking the lumber thereupon by the writ of estrepement. A party can-not be allowed to blow hot and cold in the same breath. The plaintiffs having asserted that the defendants were in possession and committing waste on the James Hepburn sur-vey, they cannot now be permitted to defeat the action by proof that such was not the fact and that it lay in another locality.

The plaintiffs have given evidence that they were in posses-sion of a tract in the name of Samuel Bowersox, surveyed originally in the warrantee name of Jacob Weidner and in his right, which according to their evidence, if believed, in no way comes in contact with or interferes with the James Hepburn survey. It looks to us that the bringing of the ejectment and the estrepement by the plaintiffs therein, was an assertion on their part that the defendants therein and the plaintiffs here were occupying lands covered by the James Hepburn survey, the superior title to which they claimed was in them, and that this action cannot be defeated by evidence that it lay elsewhere. You will understand that it cannot defeat the action entirely. Whilst this is so the plaintiffs were only restrained by the writ of estrepement from operating and lumbering on the lands described in the writ, and if they ceased to operate on other lands they cannot recover damages here for that. The plaint-iffs have given in evidence the boundaries of the Samuel Bow-ersox tract held in right of Jacob Weidner, containing about 350 acres and upwards, and that they were operating on this tract and none other when the estrepement was issued; that they had a contract with Samuel Bowersox, the owner, for all the timber growing upon the land; that they had a saw mill erected thereon where they were working and manufacturing the timber standing upon the land into lumber, when they were

Charge of Court below.

interrupted and prevented from carrying on the work by reason of the estrepement issued by some of the defendants. This contract provided that the timber should be removed from the tract by them within a certain time, to wit: Between April 2, 1883, and April 2, 1885; that they had already cut and had lying upon the ground some lumber which they were prevented by the estrepement from taking away, as well as about six hundred thousand feet of standing timber, the period fixed by the contract for the removal having expired before the eject-ment suit was terminated and the estrepement dissolved. Their contention is that during this period their hands were tied and they were prevented from operating on the land, and after the ejectment was decided that the period fixed by the contract for the removal of the timber had expired, and for this reason they suffered damages for the loss of what might have been made if they had not been interfered with.

We instruct you that the measure of damages will be the actual loss that the evidence shows that the plaintiffs have sus-tained by the issuing of this writ of estrepement. The plaint-iffs claim that there were six hundred thousand feet of standing timber on the land that they could have removed and were prevented by the defendants, which would have been worth to them six dollars a thousand. In addition they claim about two thousand feet of oak and three thousand feet of pine lumber, and a quantity of hemlock, which was left on the land and they were prevented from taking away. If you find this to be so from the evidence you will find for the plaintiffs what you believe to be right and just under all the evidence. But, as I have told you, the plaintiffs can only recover for the timber which the plaintiffs were prevented from cutting and which was already cut by them within the lines of the James Hepburn survey at the time that the estrepement was issued. The writ did not prevent the plaintiffs from cutting timber lying outside of this survey. ] 6

[As we have already told you the bringing of the eject-ment and the estrepement by the plaintiffs was an assertion that the plaintiffs occupied the James Hepburn tract of land; but it did not estop them from showing that the James Hepburn interfered with the Samuel Bowersox or the Jacob Weidner, and to the extent that the evidence satisfies you that there was

an interference there can only be a recovery for the timber on said interference. Whether there is an interference is a question for you under all the evidence. The plaintiffs insist that there is none; that the draft offered in evidence by them, of the Bowersox, shows that it does not call for the James Hepburn as an adjoiner. On the other hand the defendants have called A. K. Gift, a surveyor, who swears that he run the north line of the James Hepburn and the exterior lines of the Samuel Bowersox, or Jacob Weidner; that he knows where the chestnut oak is, the northwest corner of the Samuel Bowersox, which the plaintiffs own, and that by protracting the lines of the surveys as called for, the Bowersox would interfere on the south line with the north line of the James Hepburn about 20 or 30 rods, making the interference about 157 yards wide from the eastern to the western boundary of the tract. If you believe this evidence, and find that this was the extent of the interference and no more, then plaintiffs can only recover for the timber already cut and left on this interference and that still standing, and which the plaintiffs were prevented from taking away. If, however, you find there was no interference whatever between the James Hepburn and the Samuel Bowersox, then plaintiffs can recover for all the timber which the evidence satisfied you the plaintiffs were prevented from taking away from the Samuel Bowersox.][7]

\* \* \* \* \* \* \* \*

You will now take the case and decide it fairly and honestly in the same way you would ask to have it decided if your situations were reversed, and you were the parties litigant.

The verdict of the jury was in favor of the plaintiffs for the sum of $1,875. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ and assigned as error, inter alia:

3. The admission of the plaintiffs' offer.[3]

5. The refusal of the defendants' offer.[5]

6, 7. The parts of the charge embraced in [ ] [6] [7]

*Mr. A. H. Dill* and *Mr. S. P. Wolverton*, for the plaintiffs in error:

1. The writ of ejectment was for the James Hepburn sur-

vey, giving its courses and distances. The writ of estrepement followed the writ of ejectment, and called for the Bowersox tract on the north, thus notifying the defendants in that case that the claim was for land lying south of their tract. The estrepement warned them not to cut upon the James Hepburn, and the bond upon which this suit is brought by its very terms indemnified the defendants in the ejectment only in connection with the James Hepburn survey.

2. The defendants in those writs could have gone into court, or to a judge in vacation, and asked for the dissolution of the estrepement, and the court or a judge in vacation could have dissolved it, either with or without bail, or have made such other order as might have seemed just: § 2, act of March 29, 1822, 7 Sm. L. 520; act of February 18, 1873, P. L. 35; Byrne v. Boyle, 37 Pa. 260. And, if on such hearing the plaintiffs in those writs had appeared and insisted that the James Hepburn survey covered the same land the defendants claimed for the Samuel Bowersox, they might then have been estopped from setting up the defence now made in the suit upon the bond. The effect of the charge was to permit the recovery of a verdict made up of the value of timber cut wholly upon land not covered by the writ of estrepement.

*Mr. A. C. Simpson, Mr. Chas. S. Wolfe* and *Mr. B. F. Junkin* (with them *Mr. S. F. Simpson*), for the defendants in error:

1. It will not do for the defendants to say that they did not undertake to eject the plaintiffs from, or by their writ of estrepement to restrain them from operating upon, any but the Hepburn tract, as correctly located on the ground. They themselves located the Hepburn survey upon the Samuel Bowersox tract of which plaintiffs were rightfully in possession and upon which they were actually operating. Their only claim to the land, thus occupied and being operated, was that it was within the Hepburn survey. The real issue between the parties was whether the Hepburn survey or that part of the Jacob Weidner survey owned by Samuel Bowersox, was located where the plaintiffs were operating. This was the real question in dispute, and it was for the damages sustained for being prevented by the writ of estrepement from operating on the Bowersox tract, on the ground that it was not the

Opinion of the Court.

Samuel Bowersox tract, but the Hepburn tract, that the eject-ment suit was brought. If not located there the action of ejectment could not be sustained, for that was the only place of which the plaintiffs were in " actual possession."

2. If it had not been for the claim that the Hepburn tract was located there, there would have been no ejectment or estrepe-ment suits. It was the erroneous location on the ground by the defendants of the Hepburn tract, that led to the eject-ment and caused the writ of estrepement to be issued, and it was by reason of the writ of estrepement that the plaintiffs were restrained from operating on the Samuel Bowersox, and thereby suffered the damages for which they seek to recover under their bond. As well might the defendants concede that by taking a nonsuit in the ejectment case, the title of the plaintiffs to the Hepburn tract, as correctly located, was ad-mitted to be in the plaintiffs, as that they never proposed to eject the plaintiffs, or to restrain them in their lumbering operations, unless they were actually in possession of and operating upon the Hepburn tract, as correctly located upon the ground.

OPINION, MR. CHIEF JUSTICE GORDON:

The following is the history of this case, as we find it in the charge of the learned judge of the court below. The action is debt brought for the recovery of damages on an alleged breach of the conditions of an estrepement bond, executed by the defendants April 7, 1884. This bond originated in the manner following: Three of the defendants in this suit, Kulp, Williams and McConnell, at the date above mentioned, brought an action of ejectment against the present plaintiffs, the Bow-ens and Kline, for the recovery of the possession of a certain tract of land in the writ specifically described, and which was warranted to James Hepburn July 16, 1793. The estrepe-ment was issued under the second section of the act of April 2, 1803, for the purpose of preventing waste on the land described in the writ, and the bond was executed in accordance with the directions of the act of April 11, 1862. On March 25, 1885, the plaintiffs in this ejectment suffered a nonsuit, and there-upon the present action was brought upon the estrepement bond.

Opinion of the Court.

Now, of course, it lay upon the plaintiffs to show that they were injured in consequence of the execution of the writ of estrepement, so that the very first question is, have they succeeded in showing that they were at all damaged by this action of the defendants? We may here pause to emphasize the fact that this writ could, under the act of 1803, restrain waste only on the James Hepburn tract, and that it neither did nor could prevent the defendants from operating on any other tract. But the defendants in the ejectment, plaintiffs here, were not in possession of the Hepburn tract; never put a foot on it, and never struck an axe into its timber; in fine, they never professed to have right in or possession of it. Their operations were conducted on the Bowersox, a tract adjoining the Hepburn on the south, to which the defendants in the case in hand had no pretence of claim, nor the slightest disposition to interfere with the plaintiffs' work thereon. All this was well known to the plaintiffs, for if we are to believe the testimony of Samuel Bowen, they made an examination of the lines before they commenced work under their Bowersox agreement.

How then were they injured by the estrepement? And why did they quit operation on the Bowersox tract, when they were only enjoined to commit no waste on the Hepburn? The answer of the learned judge to these interrogatories is not as clear as might be desired. "The plaintiffs," says he, "in the estrepement, having brought their action against the defendants for that survey," i. e., the James Hepburn, "they declared of record that they," the defendants, "were in possession of the same according to the metes and bounds set out in the writ. The affidavit on which the estrepement is granted declares that the present plaintiffs had cut, and were still cutting, timber, and committing waste on the James Hepburn survey. We charge you that this constitutes an estoppel in law, and that the defendants here cannot defeat the claim of the plaintiffs by evidence that the James Hepburn survey was not located where they said it was in the action of ejectment, or that the plaintiffs were not in possession at the time the ejectment was brought, and were not restrained from taking the lumber thereupon by the writ of estrepement."

We are obliged to take exception to what is here said by the learned president of the Common Pleas, notwithstanding the

many instances which he has heretofore given us of his clearness and legal precision, for the following reasons: In the first place, the service of the writ of ejectment raised a merely prima facie legal presumption that the defendants were in possession of the land described in it, but which conclusively bound no one. In the second place, it is conceded that the allegation in the estrepement affidavit, that the defendants had cut and were cutting timber on the James Hepburn tract, was a mistake, and could not therefore affect those defendants.

Finally: It is not alleged that the writ mislocated the Hepburn survey, or that the present defendants or any one else ever attempted to show that that tract was not in fact situated as described in the writ. Truly, had the defendants, in their ejectment, so described their claim as to cover the Bowersox survey, the case would have been different; then might they have been estopped had they in this suit attempted to locate it elsewhere. But as they did nothing of the kind, and as they did not in any manner interfere with that survey, we cannot see how they can be estopped from showing the truth, or from taking advantage of the truth when shown by the plaintiffs. The only estoppel apparent in this case is that arising from the plaintiffs' own evidence, from which it is obvious that they ought to have been estopped from a recovery. They exhibit a writ ordering them to commit no waste on a tract of land to which they had no title, and of which they had no possession— on which they never did commit waste, and never intended to. How, then, were they hurt? Suppose the affidavit did allege that they were in the possession of and were committing waste on the Hepburn tract, how could that mistake, or lie, if you please, prevent their cutting on the Bowersox? The writ of estrepement was the only thing the defendants in the ejectment had to look to, and as that only warned them to avoid the commission of waste on land with which they had nothing to do, it could do them no possible harm, and it is amazing how they came to entertain the thought that that writ either did, or was intended to, interfere with their work on a neighboring tract to which they knew the plaintiffs had no claim.

It is, indeed, difficult to believe that the plaintiffs abandoned their operations on the Bowersox land for the reason now alleged; but if they did so they committed a stupid blunder,

the result of which they must bear themselves, and cannot be allowed to charge it upon the defendants.

The judgment is reversed.