# L. L. Satler Lumber Company *v.* Exler, Appellant.

*Practice, C. P.—Affidavit of defense—Issue—Allegheny County
—Fraud in fact—Fraud in law—Request for instructions.*

1. Where in an action brought in Allegheny County on a guar-
anty, the defendant sets up in his affidavit of defense facts showing
fraud in fact, without more, he cannot at the trial offer evidence of
another set of facts showing fraud in law.

2. The appellate court refused to consider on appeal an alleged
defense where at the trial the defendant did not request any in-
structions on the subject although the judge particularly requested
that any omissions he might have made might be called to his at-
tention.

## 136 L. L. SATLER LUMBER CO. v. EXLER, Appellant.

*Evidence — Fraudulent representations — Conclusion of law—Threat—Guaranty—Judicial records.*

3. In an action on a guaranty, it is not error to refuse the defendant permission to show that the president of the plaintiff corporation had said that his company would put the principal debtor into bankruptcy if the defendant would not sign the guaranty, and had "stated as a fact that this would destroy the lien of the defendant's mortgage," which had not been recorded.

4. Such a statement is a mere representation of a conclusion of law. The mere designation of the representation as a statement of "fact" cannot change the character of the thing offered to be proved.

5. In an action upon a guaranty the record of a suit in another court between a trustee in bankruptcy of the principal debtor, a corporation, and the guarantor, is not admissible in evidence, if it appears that the record as offered was merely cumulative evidence on a point which was not a main issue.

*Contracts—Joint and several contracts—Guaranty.*

6. Whether a contract is joint or several depends upon the nature of the interest of the parties, and the intention at the time it was made, and the rule is that if the consideration moves from the promisees separately, a promise to them is prima facie several.

7. Two corporations held four promissory notes of a third company aggregating over three thousand dollars, each of the companies holding two notes. An individual guaranteed, in a separate paper, these notes to the extent of three thousand dollars. The notes were specifically referred to in the contract of guaranty and the person signing it agreed to become the guarantor "on the above paper." *Held*, that the contract of guaranty was not joint, but several.

*Guaranty—Alleged false representations—Case for jury—Evidence.*

8. In an action upon a guaranty of the notes of a corporation, it appeared that the defendant held stock of the corporation as collateral, and that the company owed him a large sum of money upon an unrecorded mortgage, and also a smaller sum on a judgment note not entered up. The corporation plaintiff and another corporation held the notes of the company, which the defendant guaranteed. There was evidence that plaintiff insisted upon payment of its notes, and that at a conference at which were present the president of the plaintiff company, the defendant, and stockholders of the principal debtor a financial statement was presented to the parties and discussed by them. It was read aloud by the president of the plaintiff who analyzed and commented upon it. The two corporations holding the notes offered to renew them if

defendant would endorse them. This at first he refused to do, but later gave a separate guaranty of the notes. The defendant claimed that the president of the other note-holding corporation acting as well for the plaintiff made false representations as to the financial condition of the principal debtor. The president denied this and testified that he had done nothing but read aloud figures contained in the statement, and in this he was corroborated by other witnesses. *Held,* that the question as to whether any false representations were made was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Nov. 6, 1912. Appeal, No. 157, Oct. T., 1912, by defendant, from judgment of C. P. Allegheny Co., Third Term, 1908, No. 620, on verdict for plaintiff in case of L. L. Satler Lumber Company v. Joseph Exler. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a guaranty.

At the trial it appeared that the written guaranty upon which the suit was brought was as follows:

Whereas the American Box Company of Etna, Pa., is indebted to the L. L. Satler Lumber Company for lumber furnished in amount of thirty hundred and forty-four ($3044.00) dollars and also indebted to the American Lumber & Manufacturing Co. in amount of thirty-two hundred and forty-four ($3244.00) dollars. The aforesaid lumber companies agree to accept in payment thereof the American Box Company's notes with Theodore Geiselhart's endorsement thereon as follows:

One sixty days for $761.00 and $811.00
" eighty days for $761.00 and $811.00
" hundred days for $761.00 and $811.00
" four months $761.00 and $811.00

It is understood and agreed by the American Lumber & Mfg. Co. and the L. L. Satler Lumber Co., that if requested, by the American Box Company, they will renew either or all of these notes at maturity for one-half for a period of 30 or 60 days.

In consideration of the above, also in consideration of the sum of $1.00 receipt for which is hereby acknowledged and other valuable consideration, I the undersigned, hereby agree to become guarantor on the above paper in the sum of $3,000.00 and no more.

Witness our hands and seals this 20th day of November, 1907.

JOS. EXLER                                    [SEAL]

L. L. SATLER LUMBER CO.                        [SEAL]

L. L. Satler, Pres.

AMERICAN LUMBER & MFG. CO.    [SEAL]

W. D. Johnston, Pres.

Witness

P. F. QUINN.

The facts are fully stated in the opinion of the Supreme Court.

At the trial the defendant made this offer:

"The defendant offers to show by the witness on the stand, and by other witnesses, as one of the inducements which led the defendant to sign the contract in question, that at the time it was executed, that this plaintiff stated to the defendant as a fact, that the defendant had a mortgage covering the property of the box company, and threatened that unless the defendant signed this paper, the American Box Company would be put in bankruptcy by the plaintiffs, and stated as a fact that this would destroy the lien of the defendant's mortgage, so that he would come in just the same as a general creditor; that the defendant at that time did not know his mortgage had not been recorded. That after the mortgage was executed, he became ill and left the city, and that his mortgage was left with his attorneys, Milliken and Cramer, to be recorded. That when the plaintiffs, through Mr. Johnston, made the above statement, that defendant left the meeting and went to consult with his attorneys and found them both absent. That he thereupon returned to the meeting, but objected to signing the paper until he had an opportunity to consult with

his counsel. The plaintiffs stated that the paper must be signed immediately, and that unless it was signed that very day they would proceed to put the box company in bankruptcy, and that this would destroy the lien of defendant's mortgage. That this statement made by the plaintiffs was untrue and that the putting of said American Box Company into bankruptcy would not as a fact destroy his mortgage. That the defendant relied, however, upon these statements made by the plaintiffs, and was thereby induced to execute the guaranty involved in this suit.

By Mr. Gealey: The offer is objected to as incompetent, irrelevant and immaterial, and for the further reasons that the conclusions of law arrived at in the offer are not correct as to whether the lien of the mortgage would have been divested or as to whether there would or would not have been a lien of the mortgage under the conditions stated in the offer.

Objection sustained.

To which ruling of the court counsel for defendant requests an exception.

Exception allowed and bill sealed. (4)

"Defendant's counsel offer in evidence the bill, answer and opinion of the court and decree of the court in the case brought by John B. Montgomery, Trustee of the American Box Company, versus Joseph Exler at No. 6, May term, 1908, in the District Court of the United States for the Western District of Pennsylvania; this for the purpose of showing that in that proceeding one of the questions at issue was whether or not Joseph Exler was a stockholder in the American Box Company and was indebted to that company for the purchase price of the stock and that in said case it was found and adjudicated by the court that the said Joseph Exler, the defendant, held as collateral security 377 shares of the capital stock of the said American Box Company but was not a subscriber to the stock of said

company or an owner of any part of same.    This is offered as conclusive evidence of that fact.

By Mr. Gealey: Objected to for the reason that it is not a proceeding to which the parties to these suits were parties, nor is it a proceeding in any way connected with the bankruptcy proceeding so that the action of the trustee or decree against him would be binding upon these parties.

Objection sustained.

To which ruling of the court counsel for defendant request an exception.

Exception allowed and bill sealed." (5)

"Defendant's counsel also offer in evidence this same record for the purpose of showing that the statements made by Mr. Johnston to the effect that if the American Box Company was put in bankruptcy that the lien of Exler's mortgage would be destroyed and he would be put in the same position as an unsecured creditor was untrue, it having been there adjudicated that the said mortgage in question was a valid lien upon the property of the American Box Company from the time of delivery.

Objected to as incompetent, irrelevant and immaterial.

Objection sustained.

To which ruling of the court counsel for defendant request an exception.

Exception allowed and bill sealed." (6)

The court charged in part as follows:

["Now, gentlemen, a false representation to avoid a contract is not necessarily merely a lie; that is, sometimes there are lies which are not sufficient to void contracts.    It is not always sufficient that the representation which is made turns out to be untrue.    The underlying idea is that if the law overturns a contract which has been obtained by deceit the misrepresentation must be first of a fact, not merely of something that is a matter of opinion, but it must be of a fact that is known to be untrue or a statement made recklessly.    Reckless-

ness on the part of one making a statement is equivalent to his making a statement which he knows to be untrue, if he makes it without knowing or if he makes it without caring whether it is true or not he takes the risk of it, or if he has not sufficient ground on which to make the assertion."] (7)

["In this instance there is no testimony that Mr. Johnston came into this meeting and made independent assertions as to the amount of lumber, book accounts, etc."] (8)

["And I will say right here parenthetically if the box company lied or Mr. Quinn lied or any one else lied except under this testimony Mr. Johnston it makes no difference. Mr. Exler might have been deceived by the men who got him to go into this thing. He may have lost his money or not as the case may be, and he may be unfortunate, but that would not void this contract."] (9)

["Mr. Johnston had this paper and so far as he read from it there is no fraudulent representation which would void this contract. The figures given by Mr. Johnston from that paper were of course presented at the creditors' meeting (remember I have called it that just as a term) by the company; there is no evidence that he knew anything about them other than that."] (10)

["I have taken away on this question of false pretense from your consideration any deceit because of an inflated statement made by Quinn or by the company."] (11)

["Just exactly what was read we do not know but from the whole testimony it is very plain that Johnston read figures from that paper and if the underlying fact as to those figures, as to the amount of lumber, or the book accounts or horses and wagons, things of that kind —if the underlying fact was wrong he is not to blame for that. There is not a scrap of evidence that he was behind the counter at these books or anything of that

kind and you would have no right to enter a verdict
upon such a wild suspicion as that."] (12)

· Verdict and judgment for plaintiff for $1,778.67. De-
fendant appealed.


*Errors assigned,* among others, were (4-6) rulings on
evidence, quoting the bill of exceptions; (7-12) above
instructions, quoting them.


*John M. Freeman,* with him *D. T. Watson, Alex-
ander Gilfillan* and *Harry F. Stambaugh,* for appellant.
—The undisputed testimony shows that the plaintiffs
made representations based upon a padded and false
financial statement of the box company and thereby
induced the defendant to sign the guaranty. In so doing
they were guilty of fraud, it being immaterial whether
or not they knew that the financial statement was
padded and false: Tyson v. Passmore, 2 Pa. 122;
Braunschweiger v. Waits, 179 Pa. 47; Jack v. Hixon,
23 Pa. Superior Ct. 453; Blygh v. Samson, 137 Pa. 368;
Lake v. Weber, 6 Pa. Superior Ct. 42; Blest v. Brown,
4 De Gex. Fish. & Jones, 367; Molson's Bank v. Turley, ·
8 Ontario (Can.) 293; Fitchburg Savings Bank v. Rice,
124 Mass. 72; Woolley v. Louisville Banking Co., 81
Ky. 527; Kathan v. Comstock, 140 Wis. 427 (122 N. W.
Repr. 1044) ; Rorer Iron Co. v. Trout, 83 Va. 397 (2 S.
E. Repr. 713) ; Grim v. Byrd, 73 Va. 293.

By accepting the benefit of the fraudulent act of an-
other plaintiffs make themselves party to the fraud:
Jones v. Building Assn., 94 Pa. 215; Meyerhoff v.
Daniels, 173 Pa. 555; Singer Manufacturing Co. v.
Christian, 211 Pa. 534; McNeile v. Cridland, 168 Pa. 16;
Chicago Cottage Organ Co. v. McManigal, 8 Pa. Su-
perior Ct. 632; Williams v. Kerr, 152 Pa. 560.

The court below erred in excluding defendant's offer
to prove that the plaintiffs, in order to induce the
defendant to sign the guaranty, had made misrepresen-
tations in reference to the effect of bankruptcy upon the

lien of defendant's mortgage: Tyson v. Passmore, 2 Pa. 122; Molsons Bank v. Turley, 8 Ont. (Can.) 293; Windram v. French, 151 Mass. 547 (24 N. E. Repr. 914); Kehl v. Abram, 210 Ill. 218 (71 N. E. Repr. 347); Hill v. Coates, 127 Ill. App. 196; Texas Cotton Products Co. v. Denny, 78 S. W. Repr. 557; Dashiel v. Harshman, 113 Iowa 283 (85 N. W. Repr. 85); Burns v. Lane, 138 Mass. 350; McDonald v. Smith, 139 Mich. 211 (102 N. W. Repr. 668).

The court below erred in excluding the record of the equity proceeding in the United States Court between John B. Montgomery, Trustee in Bankruptcy of the American Box Company, plaintiff, and Joseph Exler, defendant, in which proceeding it was found and decided by the court that Exler was not a stockholder of the American Box Company: In re MacDougall, 175 Fed. Repr. 400; In re Skinner, 97 Fed. Repr. 190; In re Tiffany, 147 Fed. Repr. 314; In re Baird, 84 Cal. 95 (24 Pac. Repr. 167; Napoleon Hill Cotton Co. v. Smith, 144 Mo. App. 169 (129 S. W. Repr. 259); Atlantic Trust Co. v. Dana, 128 Fed. Repr. 209.

As the contract is in writing and is a joint obligation, any suit brought thereon by the plaintiffs must be a joint action: Mann v. McDowell, 3 Pa. 357; Humbird v. Davis, 210 Pa. 311; Archer v. Dunn, 2 W. & S. 327; Morse v. Chase, 4 Watts 456.

*Robert B. Ivory,* with him *T. M. Gealey,* for appellee. —The undisputed testimony shows that the defendant, with his eyes open dealing at arms length with the plaintiffs, for the purpose of protecting his own interests, signed the guaranty agreement in this case, and for months thereafter stood by reaping the benefits thereunder, and now after sweeping away by his mortgage the entire assets of the box company, as he was allowed to do under said contract of guaranty, seeks to rescind his contract of guaranty without offering to

put the parties in status quo: Fulton v. Hood, 34 Pa. 365.

The plaintiffs had no joint interest: Bradburne v. Botfield, 14 Meeson & Welsby 559; Burton v. Henry, 90 Ala. 281 (7 So. Repr. 925); Shipman v. Straitsville Central Mining Co., 158 U. S. 356 (15 Sup. Ct. Repr. 886); Morgan v. Wordell, 178 Mass. 350 (59 N. E. Repr. 1037).

OPINION BY MR. JUSTICE MOSCHZISKER, January 6, 1913:

This was an action brought to recover on a written contract in which the defendant agreed to become guarantor on certain promissory notes of the American Box Company. The verdict was for the plaintiff and the defendant has appealed.

The L. L. Satler Lumber Company (the plaintiff), and the American Lumber and Manufacturing Company, two separate and distinct corporations, had each sold lumber to the American Box Company, and each held a series of notes of the latter company representing their respective claims; but they had no connection with one another in such sales or in the dealings which gave rise to the case under review. On November 20, 1907, the claim of the plaintiff amounted to about $3,000 and that of the other lumber company to about $3,200. The defendant, Joseph Exler, likewise was a large creditor of the box company, for moneys loaned to it during the summer of 1907, aggregating about $23,000, and in addition thereto he had endorsed one of its notes in the sum of $2,000. Exler held an unrecorded mortgage on the plant of the box company for $20,000 and a judgment note for $3,000, on which one Theodore Geiselhart was liable as a joint-maker; this note had not been entered of record.

The testimony, viewed in the light most favorable to the plaintiff, as the verdict shows it was, entirely justifies the following abstract from the appellee's statement of the case:—"The notes of the plaintiffs had matured

a few days prior to November 20, 1907, and they had been again asked to renew, which they refused to do. They were then asked by the book-keeper of the box company to meet its stockholders on November 20th to see what could be done. A stockholders' meeting had been called for that date to consider the question of increasing the capital stock, and to acquaint the stockholders with its condition; a financial statement had been prepared by the book-keeper. The stockholders met in Senator Kline's office (president of the box company), and proceeded to consider the matter. At this meeting the above-mentioned financial statement was submitted and carefully and thoroughly examined and discussed. Senator Kline testified that defendant was present at this meeting. During the progress of the meeting Mr. Johnston and Mr. Satler, representing the plaintiff companies, arrived and remained in the outer office until its conclusion, when the stockholders, bringing with them the financial statement, came out and met them. This statement was then presented to Johnston and Satler, the stockholders urging them to renew their notes and showing them their financial condition from the statement. The parties present, including the defendant, sat around a large table and thoroughly discussed the statement. This statement......a considerable portion of the time lay upon the table with full privilege on the part of anyone to examine same if he so desired. The statement was read by Johnston, who analyzed it and commented upon it. The substance of his analysis and comments on the statement...... was that it showed the company to be in good financial condition if they had more ready cash, and that with proper management, if they had the lumber which the statement showed, they ought to work out. Plaintiffs, after some discussion, agreed to renew their notes if defendant would endorse them. This he refused to do. After defendant's persistent refusal to endorse any renewal notes he was told by Johnston and Satler that

they had learned he held an unrecorded mortgage for $20,000 against the box company's plant; that plaintiffs considered themselves just as much entitled to security as he, and that unless they were given security for their claims they would proceed immediately against the box company, and that his position with his mortgage would be no better than that of an ordinary creditor. Defendant then left the meeting and went to see his attorney. He returned a little later and stated that his attorney was out of the city and would not be back for some time, and asked that the matter go over until his return. Mr. Satler replied that he must go south that night to be gone for some considerable time, and that the matter must be adjusted in some way before he left. Defendant then, in company with Mr. Kline and Mr. Geiselhart, went into another room. After a short time they returned and defendant stated that he would not endorse the notes, but that he would go upon a separate guaranty of said notes to the extent of $3,000. This proposition was accepted by plaintiff; the notes were renewed and the guaranty in question in this suit was executed by defendant.......Shortly after the renewal of the notes, and the execution of the guaranty, defendant put his mortgage on record and subsequently, on foreclosure of same, obtained the entire plant and assets of the box company to the exclusion of all other creditors. He also entered his judgment note and succeeded in collecting about two-thirds of it out of the estate of Theodore Geiselhart, who was an endorser."

The defendant testified in a vague and general way that he was induced to sign the guaranty by false and fraudulent representations concerning the financial condition and the value of the property of the box company, made by Mr. Johnston, the president of the American Lumber Co.; that in making the alleged representations the latter acted not only for his own corporation but also for the plaintiff company. Mr. Johnston testified that he had no knowledge and never pretended to have

any knowledge of the financial condition of the box·
company or the value of its property, other than the
information which he in common with all present at the
meeting obtained from the written statement, and that
he had not made any declarations or expressed any
opinion concerning the same, other than reading aloud
the figures contained in the statement; in this he was
corroborated by certain of the plaintiff's witnesses. The
issue as to whether or not Johnston had made any decla-
rations of the character alleged, apart from the reading
of the statement, was properly submitted to the jury
and found against the defendant.

But, aside from the question of Johnston's alleged in-
dependent declarations, the appellant contends that
some of the figures contained in the written statement
were false in that they represented inflated values, and
that, inasmuch as Johnston read these figures at the
meeting to show the good condition of the box company
and thereby to obtain the guaranty, this in law was an
adoption thereof and constituted a fraud upon him ir-
respective of the former's knowledge of their falsity.
As to this the learned court below in an opinion re-
fusing a new trial, truly says, "that is not the defense
set up in the affidavit." Under the practice in Alle-
gheny County the issues are defined by the statement of
claim and the affidavit of defense. In the defendant's
affidavit of defense there is not a single reference to the
written statement prepared by the book-keeper of the
box company or its use by Johnston, and no one read-
ing the affidavit can doubt that the intention was to
aver a fraud in fact, i. e., that Johnston had by his
own independent declarations knowingly deceived the
defendant. Had the defendant's affidavit presented the
defense now relied upon, the plaintiff would have had
to prepare its case along different lines, in that it would
have been obliged to show that the figures in the written
statement were substantially correct, and it could not
have depended upon Johnston's lack of knowledge of

their alleged falsity; hence, the court below was justified in taking the position it did in regard thereto. As a matter of fact the defense now so strongly pressed by counsel for the appellant, that in law Johnston was guilty of fraud "whether or not he knew the financial statement was padded and false," so far as the record shows, was not relied upon at trial. The defendant did not request such an instruction, and after the trial judge had at great length submitted to the jury the part of the case concerning Johnston's alleged declarations, he said to counsel, "This is all on this branch of the case. If there is something you gentlemen think I should refer to on that branch I wish you would call my attention to it now," and at the end of his charge he again asked that any omissions be called to his attention; but counsel made no response on either occasion. The defendant presented no evidence to show the alleged falsity of the statement other than the testimony of the book-keeper of the box company, and while that witness used the word "inflation," he explained that he merely meant thereby that certain of the figures were placed above the actual cost of the property they represented, adding, "the officers of the box company thought their property was worth that much more than the actual cost; they had spent six months or more in building and had good will in trade, etc."; and his testimony would indicate, at least so far as concerns the item of real estate, that there might have been some foundation for that thought. Although certain of the valuations may be unjustifiably high, it is not clear that the statement can properly be termed a false and fraudulent one; but be this as it may, it is clear that when Johnston read therefrom he had no knowledge of the alleged overvaluations. On the other hand, the defendant had received several prior statements from the box company showing its condition and containing the same valuations read by Johnston, and it was upon knowledge gained through those statements that he made his loans. More than this, the defendant

had visited the plant and attended several stockholders' meetings where the affairs of the corporation were discussed. The jury probably believed, as might any one reading the testimony in this case, that the defendant well knew the insecure financial condition of the box company; and they were justified in concluding, as they no doubt did, that he was not induced to act by anything that Johnston had said or read in his presence, but that the real inducement to the signing of the guaranty was his desire to take care of the box company and keep it out of bankruptcy as long as possible. In other words, the jury may well have accepted the testimony of the defendant himself when he said, "that was really the ground only that I sign it on account of that, because they will stop and not put the company in bankruptcy." When the defendant declared in one breath that Johnston made him believe that he would take no risk in signing the guaranty, and in the next that he signed to keep the company from going into bankruptcy, to say the least, he hardly made out a defense that would justify a jury in rendering a verdict the effect of which would be to release him from the obligations of a solemn written contract.

We are not impressed that error was committed by the refusal of the offer to show that Johnston had said that his lumber company would put the box company into bankruptcy if the defendant did not sign the guaranty, and had "stated as a fact that this would destroy the lien of the defendant's mortgage." Concerning this, the court below properly held, "The representation that in case of bankruptcy the defendant's unrecorded mortgage would not be a lien, if made, was a bald representation of a conclusion of law....... It is not the exceptional case where a statement of law is really one of fact, or a mixed statement of law and fact." The mere designation of Johnston's alleged representation as a statement of "fact," could not change the character of the thing offered to be proved. The defendant's offer

comes down to this,—Johnston threatened to put the box company into bankruptcy, adding, that this would destroy the lien of the defendant's mortgage. The assertion that the defendant's lien would be destroyed by the bankruptcy of the box company, was merely a conclusion of law upon a given state of facts, and it did not involve any implied statement of other underlying facts not expressly disclosed; wherein it differs from the authorities cited by the appellant.

During the course of the trial the defendant swore that he was not a stockholder in the box company, and before the other side gave testimony to contradict this, he made an offer of the record of an equity proceeding in the United States Court between the trustee in bankruptcy of that corporation and himself, wherein it was held as a matter of law that he was not such a stockholder; the offer was refused, and this is assigned for error. The point as to whether or not the defendant was a stockholder in the box company, was a side issue. He admittedly held quite a block of the stock in his own name as collateral for his loan, and it was undoubtedly to his interest to keep the company out of bankruptcy as long as possible. But it is not necessary to determine the question of the admissibility of this record, for as offered it was merely cumulative evidence on a point which was not a main issue, and in no event could its rejection be classed as reversible error. As to the offer of the record for the purpose of showing that it had been therein adjudicated that the mortgage held by the defendant was a valid lien on the box company's plant, and thereby to prove that Johnston's alleged representations concerning the effect of the latter's bankruptcy upon the mortgage in question were not true, it is sufficient to say that at the time of the representations the facts in relation to the mortgage were materially different from those existing at the date of the alleged adjudication, and to add that we have already ruled that

the so-called representations of fact were merely state-
ments of opinion on the law.

We do not view the guaranty as a joint contract with
the two lumber companies, and we cannot agree with
the appellant's contention that any action thereon would
have to be by the companies jointly. The court below
reached the proper conclusion on this branch of the
case when it stated, "The contract is several....... The
sum of $3,000 is......the fixed limit of liability and
means not to exceed $3,000." At the time of the execu-
tion of the guaranty each of the lumber companies held
four notes of the box company; those of the plaintiff
being drawn for $761 each and those of the other com-
pany for $811 each. The plaintiff's notes were endorsed
over to and held by it individually and the four be-
longing to the American Company were endorsed to and
held by that company individually. As we construe the
contract, the intention was to guarantee this paper for
the benefit of the several holders thereof in the propor-
tions to which they might respectively be entitled; it
was not in any sense for the benefit of the two com-
panies jointly. Whether a contract is joint or several
depends upon the nature of the interest of the parties
and the intention at the time it was made, and the rule
is that if the consideration moves from the promisees
separately, a promise to them is prima facie several:
2 Page on Contracts, Sec. 1142. The writings in the case
consist of the notes and the contract of guaranty; the
notes are specifically referred to in the contract and
the defendant therein agrees to become guarantor
"on the above paper"; when these writings are taken to-
gether it is apparent that the contract was not intended
as a joint one. Although the lumber companies had a
common interest because each held the notes of the box
company, they were not connected in any way, and they
had no joint interest to be protected; neither company
could have renewed the notes of the other, and there
was nothing to suggest that it ever was the intention

that they should. As already indicated, we are of opinion that the contract was properly held to be several; but we may add that actions were brought thereon by both the lumber companies, the two cases were tried together and each company recovered a verdict for its proportion; hence, no harm can come to the appellant through future suits growing out of the guaranty.

After a trial on the merits the prime question is not, was the case tried with strict correctness in every respect, but was substantial error committed in any material particular. We have read the well-considered argument of counsel for the appellant and all of the voluminous record, and we have examined the numerous authorities cited; while the charge is long and discursive and may be open to just criticism in some particulars, taking it as a whole we are not convinced that the trial judge fell into reversible error. The main issues were put to the jury in such a manner that they must have understood the controlling questions they had to decide, and as before noted, counsel for the appellant twice were expressly given the opportunity to have fuller statements of their position placed before the jury, but failed to take advantage thereof; under such circumstances we are not inclined to look at a charge with an overly critical eye. We shall merely add that in view of the facts in the present case we do not think any harm was done by the trial judge in stating to the jury that the parties were "dealing at arm's length." This is not the ordinary case of undue advantage taken of a surety; the parties dealt on equal terms and there was no relation of confidence between them; Johnston represented a creditor seeking to obtain security for a debt due by a corporation which the defendant had an interest to support; the representatives of that corporation were present at the time Johnston made his alleged representations, and the facts concerning its condition were equally available to all parties. (See Fulton v. Hood, 34 Pa. 365, 371.)

The assignments of error are overruled and the judgment is affirmed.

