Miller et al., Appellant, *v.* South Hills Trust Company et al.

274

Argued April 25, 1929.

Before Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*A. O. Fording,* and with him *Emerson G. Hess,* for appellant, cited: Bank v. Reese, 26 Pa. 143; Gervis v. Kay, 294 Pa. 518; Drews v. Williams, 50 La. Ann. 579; Hutchins v. Munn, 209 U. S. 246.

*John J. Heard,* and with him *Reed, Smith, Shaw & McClay* and *C. Elmer Bown,* for appellees.—Plaintiff

showed no damage sustained by the granting of the injunction: Magnolia Petroleum Co. v. Holz, 299 S. W. 664; Coosaw Mining Co. v. Caroline, etc., Co., 75 Fed. 860; South Penn Oil Company v. Stone, 57 S. W. 374; Steel v. Gordon, 14 Wash. 521; Kulp v. Bowen, 122 Pa. 78.

All the obligees in the injunction bond should have been joined as plaintiffs in the suit: Sweigart v. Berk, 8 S. & R. 308; Pittsley v. King, 206 Pa. 193; John B. Rose Co., 275 Fed. 409; Mintz v. Tri-Country Natural Gas Co., 259 Pa. 477.

Plaintiff cannot sue on the bond for his own use and the use of his partner for damages to stock owned by the partnership: Wilson v. Wallace, 8 S. & R. 53; Horbach v. Huey, 4 Watts 455; Clarke v. Slate Valley Railroad Company, 136 Pa. 408.

OPINION BY LINN, J., July 2, 1929:

This appeal is from the refusal to take off a nonsuit in an action on a bond given on obtaining a preliminary injunction. While the non-suit was entered for lack of proof of damage, we must consider two questions: (1) was there sufficient evidence of damage to go to the jury? (2) can the plaintiff, as one of the obligees named in the bond, maintain the suit, or must all the obligees join as plaintiffs?

The preliminary injunction was obtained ex parte on the bill and injunction affidavits pursuant to equity rules 81 and 82 (since revised as rules 38 and 39). The restraint lasted until the bill was dismissed; the decree was affirmed July 2, 1924, and is reported as South Hills Trust Company v. Baker et al., 83 Pa. Superior Ct. 243. The defendants in equity were Harvey A. Miller (legal plaintiff in the present action), Harry W. Baker, the West Penn Vinegar Co., a corporation of Pennsylvania and three of its officers, Louis Skirboll, president, I. Skirboll, treasurer and

Louis Plung, secretary. All those defendants were named as obligees in the injunction bond. The bill prayed that Miller and Baker be enjoined "from assigning or transferring" a certificate for 135 shares of the capital stock of the vinegar company alleged to be owned by Baker and to be in possession of Miller; and also that the corporation and its three officers be enjoined "from transferring said certificates on the books of said corporation." Complainant alleged that it had judgment against Baker and that he owned 135 shares of the stock of the vinegar company, having a market value of $15 a share, had issued an attachment execution and desired to subject the stock to sale for account of its judgment and therefore required the injunction prayed for and a receiver to take possession of the certificate, sell it and apply the proceeds on account. It will be observed that the defendants had neither a common interest nor the same interests in the certificates, or in the transaction which led to the injunction.

The purpose of a preliminary injunction, generally speaking, is to maintain a given status until there can be inquiry into the merits: Fredericks v. Huber, 180 Pa. 572; Keown v. Mallissee, 57 Pa. Superior Ct. 592, 599. On final hearing the chancellor found that, though the certificate for the stock stood in Baker's name, it had, some time before, been assigned and delivered for valuable consideration to Miller, who, with his law partner, owned it; that Baker did not own it; and accordingly, as has been stated, the bill was dismissed.

After that suit was disposed of, Miller brought the present action of assumpsit on the bond, suing to the use of himself and his law partner for damages resulting from the injunction restraining him from selling the stock. The defendants in this suit are the trust

company that was complainant in equity, and its surety on the bond.

1. After plaintiff's motion to take off the non-suit had been argued in the court in banc, an opinion was filed stating that the non-suit was granted and sustained for want of proof of plaintiff's damage. On that subject appellant calls attention to an inadvertence in the opinion filed below. The court states: "When the injunction issued the stock had a book value, according to testimony offered by the plaintiff, of $21 a share, and this book value steadily decreased until it finally reached nothing. There is no suggestion in the case that the partnership or plaintiff could have sold the stock at any time at a figure higher than $6, and there is not a word in the case to indicate that the stock would have been disposed of at that figure or at any price which could have been obtained for it. It does not appear that any offer was ever received for the stock, or that plaintiff was prevented from selling it by the injunction. The case is entirely bare of any facts which would indicate that plaintiff could and would have sold this stock for any amount if not restrained by the injunction. Under these circumstances we cannot see how Miller or the partnership has suffered any loss by reason of the injunction. There is not a thing in the case to show that a sale of the stock was prevented."

That statement, appellees concede, is not wholly accurate, as the following quotation from the record shows. The plaintiff testified: "Q. Do you know, Mr. Miller, whether you could have sold this stock at any time between October 16, 1922, and June, 1923?

A. I don't know whether I could. I made no effort to sell it. In June of 1923, I was called by Mr. Lehman on the telephone, and he offered us six dollars a share.

I stated to him, at that time, I was not at liberty to sell it.

Q. Mr. Miller, if it had not been for this injunction or this agreement, wouldn't you have sold them to Mr. Lehman for six dollars a share?

A. I don't know whether I would or not. I would have made some investigation before I made up my mind.

Q. Could you say whether, if it had not been for this injunction, that you would have sold this stock at all?

A. I would have. I didn't buy it as an investment.

Q. You didn't buy the stock at all, did you?

A. Well, I obtained it, or we obtained it, Mr. Nesbitt and myself.

Q. Mr. Miller, I should have asked you how long you continued to obey the injunction?

A. Until the remittitur.'' [July, 1924.] There was, then, evidence of an offer, a statement of a good reason why he did not pursue the offer together with a statement that he would have sold, because he did not obtain the stock to hold as an investment.

There was other evidence of the value of the stock which we need not recite because the judgment below turned on lack of evidence of a probable sale of the stock, not on absence of evidence of value. When the decree dismissing the bill was affirmed, the stock had no value. From the testimony of the plaintiff, the jury might have found that he would have accepted the offer made, if they also find that the sum offered was a fair price. While he testified that he did not know whether he would have accepted the particular offer made, he stated to the party making it that he ''was not at liberty to sell it,'' presumably because of the injunction. But his testimony that ''if it had not been for this injunction'' he would have sold the stock,

with the statement that he "didn't buy it as an investment" is entitled to consideration by the jury. We do not think that the evidence in this record now would permit a verdict on a basis of more than the offer, in view of the inactive character of the stock and the tottering condition of the company. Appellees contend that the evidence of probable sale and damage is too indefinite to support a verdict, that a verdict based on the evidence in the record would be merely speculative or conjectural, and they cite cases considering circumstances in which loss of profits in contract or tort actions could not be proved as elements of damage. We all agree that the point when evidence is too speculative or conjectural for consideration by the jury was passed in this case when plaintiff testified that he did not hold the stock for investment but that he would have sold it, that he would have investigated the offer but for the injunction. The jury may or may not find that plaintiff lost the sale and ultimately the value of the stock "by reason of such injunction" (to quote the words of the statute) but the matter is not so clear as to enable the court to find the fact: see Fidelity Phila. Trust Co. v. Simpson, 293 Pa. 577, 585; Osterling v. Frick, 284 Pa. 397, 403, etc. The estrepement bond case cited by appellees, Kulp v. Bowen, 122 Pa. 78, went off, not on absence of damage, but, as the court shows (pp. 86, 87) on the ground that the writ in that case could restrain waste only on a tract of land of which defendants "never professed to have a right in or possession of ......" and did not restrain them on the tracts on which they were cutting timber. Damages were allowed in a suit on an estrepement bond in Johns et al. v. Johns, 88 Pa. Superior Ct. 47 (as plaintiff did not appeal from the refusal to allow profits, that point was not ruled).

In considering the allowance of damages on injunc-

tion bonds, as well as the elements of such damage, it is well to note, in view of cases cited by appellees, that the subject is not dealt with on the same theory in all jurisdictions. In Russell v. Farley, 105 U. S. 433, BRADLEY, J., considers the matter at length, notes that the authority of the chancellor to require a bond or other undertaking is inherent in his court and is founded on his power to impose terms as conditions of granting interlocutory restraint; that as the fact and extent of the exercise of this power of imposing terms is discretionary, the control of damages on the dissolution of the injunction remains in the chancellor, enabling him to award or refuse damages as may appear equitable. He also refers to state legislation requiring bonds in such cases and the procedure for recovery on such bonds. (On this subject see, too, the opinions of JESSELL, M. R., and BRETT, L. J., in Smith v. Day, 21 Ch. Div. 421.) In view of these fundamental differences we pass without discussion cases referred to in appellees' brief and come at once to our cases and our statute not referred to in the briefs. In this state, instead of allowing damages only when a chancellor in equity would do so under the theories stated by Mr. Justice BRADLEY the matter is controlled by statute, as in a number of states referred to in Russell v. Farley, supra. The Act of May 6, 1844, P. L. 564, provides ''that no injunction shall be issued by any court or judge until the party applying for the same shall have given bond with sufficient sureties to be approved by said court or judge conditioned to indemnify the other party for all damages that may be sustained by reason of such injunction.'' That, of course, means an interlocutory injunction; Com. v. Franklin Canal Co., 21 Pa. 117, 130. In Sensenig v. Parry, 113 Pa. 115, in an action on an injunction bond, an instruction to the jury was affirmed to the effect that

"you must allow no damages except such as result directly from the injunction and its immediate consequences, for the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of the vested legal rights by the injunction." See also Keown v. Mallissee, 57 Pa. Superior Ct. 592. The jury should be permitted to apply that rule to the evidence, if again produced, in this case.

2. Can the suit be maintained by Miller, or must all the obligees join as plaintiffs? The stock certificate had been assigned to Miller and delivered to him, and was in his possession; for that reason he was made a party in the suit in equity, and so became an obligee in the bond. As the chancellor found that the certificate was duly assigned to him it is immaterial to defendants in the present action that Miller acted for himself and his law partner. He is the legal plaintiff now seeking to enforce an obligation undertaken by the present defendants to him arising out of the bond in which he is named as an obligee; defendants can have no further interest in the inquiry, as the suit is to the use of the equitable party for whom Miller acted; if liable to the legal plaintiff by the terms of the bond, the liability is not discharged because there is a use-plaintiff: see cases cited in Com. v. Houk, 96 Pa. Superior Ct. 363.

But the important question is whether all the obligees must join as plaintiffs, and that requires some consideration of the contract. The bond provides: "We, South Hills Trust Company, ...... the plaintiff above named and American Surety Company of New York ...... are held and firmly bound unto Harry W. Baker, West Penn Vinegar Company, a corporation, Louis Skirboll, I. Skirboll, Louis Plung and Harvey A. Miller, the defendants above named, in the sum of $2,000 dollars lawful money of the United

States of America, to be paid to said defendants, their certain attorney, their executors, administrators and assigns; to which payment well and truly to be made, we bind ouselves, and our and each of our heirs, executors, administrators and successors firmly by these presents . ... . . .

"Whereas, the above bounden South Hills Trust Company has applied to this court of common pleas No. . . . . . ., of said County of Allegheny, for an injunction to restrain the said defendants from assigning or transferring certain certificates of stock of West Penn Vinegar Company.

"Now the condition of this obligation is such, that if the said South Hills Trust Company shall well and truly indemnify the said defendants for all damages that may be sustained by them by reason of such injunction . . . . . . ''

The first inquiry is—did all the defendants named in equity have such joint interest in the stock certificate or in the transaction proposed to be enjoined, that the promise of the obligors went to all the obligees in protection of such joint interest, or did the obligees, or any of them, have such separate interest in the certificate, or the transaction, as to require the promise of the obligors, in view of the statute, to go in protection of the separate interest of each party who was named as a defendant? It is not difficult to ascertain what must have been the intention, for defendants will not be heard to say that they intended something different from what the Act of Assembly required them to intend. The bond was given in compliance with the statute and the equity rules; and as the obligation of obligors on a bond—"the measure of the sureties' liability"—is determined by the law under which the bond is given (Crawley v. Com., 123 Pa. 275; Tullock v. Mulvane, 184 U. S. 495, 514; Hutchins v. Munn, 209

U. S. 246) we again refer to the words of the statute. It provides for indemnity for "the other party." Who is the "other party" when a number of defendants with different interests, and standing in different relation to the subject matter are enjoined? If there be more than one such party enjoined, certainly each party must be indemnified, or the statutory protection to "the other party" will be wanting. Though stated in the conjunctive in the bond, such statutory protection to an indemnitee must of necessity be separate if there be more than one party and his interest be separate. The mere fact that a number of obligees were named in the bond required by the statute, does not determine that all the obligees had a joint interest in the performance of the promise of the obligors; the interest of each is determined by intention, and we agree that the interest of the obligee, Miller, is separate and severable from the others; see generally Williston on Contracts, Vol. I, section 325. In Satler Lumber Co. v. Exler, 239 Pa. 135, a suit by one of the obligees on a bond (not an injunction bond and therefore without the weight of the statute as an element in obtaining the intention) was sustained against the obligors despite the contention that both obligees named in the writing should have sued as joint plaintiffs. The court determined that the intention was to benefit the obligees severally and not jointly, saying: "As we construe the contract, the intention was to guarantee this paper for the benefit of the several holders thereof in the proportions to which they might respectively be entitled; it was not in any sense for the benefit of the two companies jointly. Whether a contract is joint or several depends upon the nature of the interest of the parties and the intention at the time it was made, and the rule is that if the consideration moves from the promisees separately, a promise

to them is prima facie several: 2 Page on Contracts, Sec. 1142.'' See also Beckwith v. Talbot, 95 U. S. 289, 292. In construing the injunction bond given in Hutchins v. Munn, supra, the court applied the same principle. An examination of the record of that case shows that there a number of defendants were enjoined whereas the injunction bond was conditioned ''to make good to the *defendant* all damage by *him* suffered.'' It was contended that the bond could not be held to apply to Carrie Munn on the ground that the pronoun *him* in the bond could not include Mrs. Munn, that the obligee ''the defendant'' referred to her husband who was the only defendant designated in the caption to the suit, but the bond was construed in the light of the circumstances in which it was offered to and received by the court in ex parte proceedings and it was held that it applied to all the defendants, and that she could recover, though the action was not brought as this one is. In the suit in equity in which the injunction bond now before us was given, it was determined that Baker had no interest in the stock and that the legal title was in Miller, the legal plaintiff; the corporation and its officers were involved only for the purpose of stopping a possible transaction on the corporation's books; Miller was as much a share holder without a certificate as with one: Com. v. Nixon, 94 Pa. Superior Ct. 333, 340. The corporation and its officers, as to this certificate of stock, could and did lose nothing by complying with the injunction. One intention was to protect the right of the obligee Miller, who, plaintiff in the bill averred, had possession of the certificate, a fact which gave certain rights to him only, different altogether from the right to protection which the corporation and its officers, or Baker, had; as Miller was a party defendant within the words of the Act of 1844, supra, and as the bond was given to

satisfy a requirement of the act, it should be interpreted to give effect accordingly: Satler Lumber Co. v. Exler, supra; Beckwith v. Talbot, supra; Shipman v. Mining Co., 158 U. S. 356; Hutchins v. Munn, supra.

Judgment reversed and new trial awarded.